**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **PETER VICK, and JENNIFER VICK,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, and EXTRA CREDIT UNION,**<br><br>**Defendants.** | **Civil Action No. 2:26-cv-12374**<br><br>**With Jury Demand Endorsed** |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Peter Vick and Jennifer Vick ("Plaintiffs"), by and through counsel, for Plaintiffs' Complaint against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Extra Credit Union, jointly, severally, and in solido, state as follows:

## I. INTRODUCTION

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Extra Credit Union, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiff Peter Vick is a natural person residing in Clinton Township, Michigan, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

3. Plaintiff Jennifer Vick is a natural person residing in Clinton Township, Michigan, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting

**Made Defendants herein are**:

4. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling,

evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

7. Upon information and belief, Defendant Extra Credit Union, which may also hereinafter be referred to as "Extra CU," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Michigan credit union that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 6611 Chicago Road, Warren, MI 48092. Extra CU is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports (commonly referred to as “credit reports”) to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

9. Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

10. Venue is proper in this District, because Plaintiffs reside in this judicial district, the credit reporting at issue is associated to account numbers assigned to either property or the consumers who are located in this judicial district. CRA Defendant and Furnisher Defendant transact business in this District, and a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs’ claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

11. Venue is proper in this District, because the CRA Defendants and Furnisher Defendant transact business in this District. Furnisher Defendant’s headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs’ claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

12. Venue is further proper in this District, because the CRA Defendants entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of Defendants' reinvestigations were submitted to Furnisher Defendant's headquarters and investigated by Furnisher Defendant using its resources located at or closely connected to this judicial district. Furnisher Defendant managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

13. In or around May 2014, Plaintiff Jennifer Vick secured an auto loan with Extra CU and Extra CU assigned account number 426049****** (hereinafter the "Extra CU loan" or "Extra CU account" or "Extra CU tradeline").

14. In or around October 2017, Plaintiffs secured a mortgage loan for Plaintiffs' primary residence with Flagstar Bank and Flagstar Bank assigned account number 646050**** (hereinafter the "Flagstar loan" or "Flagstar account" or Flagstar tradeline").

15. Plaintiffs have been timely and consistent in the loan payments for the Extra CU account.

16. Plaintiffs have been timely and consistent in the loan payments for the Flagstar account.

17. Due to unforeseen circumstances, Plaintiffs needed to file for bankruptcy protection under Chapter 13 of Title 11.

18. On or around October 29, 2019, Plaintiffs filed for bankruptcy protection under Chapter 13 of Title 11.

19. A redacted copy of Plaintiffs' Chapter 13 bankruptcy docket report for Plaintiffs' bankruptcy case is attached hereto as Exhibit "A."

20. In or around November 2021, a fraudulent charge account was opened under Plaintiff' Peter Vick's name with Mission Lane and Mission Lane assigned account number 431503 (hereinafter the "Mission Lane account" or "Mission Lane tradeline").

21. Peter Vick did not open the Mission Lane account and has disputed this account with Mission Lane.

22. On April 8, 2025, Plaintiffs were discharged from Chapter 13 Bankruptcy and excepted from discharge the Extra CU secured auto loan, and Plaintiffs' mortgage loan, the Flagstar loan.

23. Plaintiffs made timely and consistent loan payments for the Extra CU auto loan during their pending chapter 13 bankruptcy.

24. Plaintiffs made timely and consistent loan payments for Flagstar mortgage during their pending chapter 13 bankruptcy

25. A redacted copy of Plaintiffs' Chapter 13 Discharge Order is attached hereto as Exhibit "B."

26. Throughout Plaintiffs' Chapter 13 bankruptcy, under direct or indirect order from the bankruptcy, timely monthly payments were made to the Flagstar mortgage and Extra CU account.

27. Sometime in January 2026, Plaintiffs obtained Plaintiffs' three-bureau credit report and noticed that Plaintiffs' Equifax, Experian, and Trans Union credit reports were not accurate.

28. A redacted copy of Plaintiff Jennifer Vick's January 2026 tri-merge credit report

is attached hereto as Exhibit "C."

29. A redacted copy of Plaintiff Peter Vick's January 2026 tri-merge credit report is attached hereto as Exhibit "D."

30. Within the Tri-Merge credit reports, both Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' Flagstar mortgage: Equifax failed to update the reporting of the Flagstar mortgage after Plaintiffs' chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property before, during, and after Plaintiff's chapter 13 bankruptcy. Additionally, Equifax reported the closed Flagstar mortgage with no closed date, a high balance of "$0," and an incorrect last payment date of October 2019.

31. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiffs' residential home mortgage debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Flagstar mortgage tradeline after the chapter 13 bankruptcy was discharged.[1] This reporting is also incorrect because it does not accurately reflect the date of closure, the high balance, or the last payment date of the Flagstar mortgage.

32. Within the Tri-Merge credit report, Plaintiff Jennifer Vick noticed that Equifax

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

reported the following inaccuracies for her Extra CU account: Equifax failed to update the reporting of the Extra CU account after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, and making payments to the secured auto debt during Plaintiffs' chapter 13 bankruptcy. Additionally, Equifax reported the closed Extra CU account with no closed date, a high balance of "$0," an incorrect last activity date of October 2019, and an incorrect last payment date of October 2019.

33. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff Jennifer Vick's secured auto debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Extra CU tradeline after the chapter 13 bankruptcy was discharged. This reporting is also incorrect because it does not accurately reflect the date of closure, the high balance, the last activity date, or the last payment date of the closed Extra CU account.

34. Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a Chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it

prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

35. Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by both furnishers and Equifax.

36. Within the Tri-Merge credit reports, both Plaintiffs noticed that Experian reported the following inaccuracies for Plaintiffs' Flagstar mortgage: Experian failed to update the reporting of the Flagstar mortgage after Plaintiffs' chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property before, during, and after Plaintiff's chapter 13 bankruptcy. Additionally, Experian reported the closed Flagstar mortgage with no closed date, no last payment date, and a last activity date of November 2019.

37. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiffs' residential home mortgage debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Flagstar mortgage tradeline after the chapter 13 bankruptcy was discharged.[2] This reporting is also incorrect because it does not accurately reflect the date of closure, the last payment date, or the last activity date for the Flagstar mortgage.

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

38. Within the Tri-Merge credit report, Plaintiff Jennifer Vick noticed that Experian reported the following inaccuracies for her Extra CU account: Experian failed to update the reporting of the Extra CU account after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, and making payments to the secured auto debt during Plaintiffs' chapter 13 bankruptcy. Additionally, Experian reported the closed Extra CU with no closed date, no last payment date, and an incorrect last activity date of October 2019.

39. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff Jennifer Vick's secured auto debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Extra CU tradeline after the chapter 13 bankruptcy was discharged. This reporting is also incorrect because it does not accurately reflect the date of closure, the last payment date, or the last activity for the Extra CU account.

40. Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a Chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it

prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

41. Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by both furnishers and Experian.

42. Within the Tri-Merge credit reports, both Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' Flagstar mortgage: Trans Union failed to update the reporting of the Flagstar mortgage after Plaintiffs' chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property before, during, and after Plaintiff's chapter 13 bankruptcy.

43. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiffs' residential home mortgage debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Flagstar mortgage tradeline after the chapter 13 bankruptcy was discharged.[3]

44. Within the Tri-Merge credit report, Plaintiff Jennifer Vick noticed that Trans Union reported the following inaccuracies for her Extra CU account: Trans Union failed to update the reporting of the Extra CU account after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

references to Plaintiffs' chapter 13 bankruptcy, despite the Plaintiffs having been discharged from chapter 13 bankruptcy, and making payments to the secured auto debt during Plaintiffs' chapter 13 bankruptcy. Additionally, Trans Union reported the closed Extra CU with an incorrect last payment date of February 2025.

45. This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff Jennifer Vick's secured auto debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Extra CU tradeline after the chapter 13 bankruptcy was discharged. This reporting is also incorrect because it does not accurately reflect the last payment date of the closed Extra CU account.

46. Within the Trans Union credit report Plaintiff Peter Vick noticed that Trans Union reported the fraudulent Mission Lane account with bankruptcy information and indicators even though the fraudulent unsecured charge account was opened after the bankruptcy filing and was not included in or discharged through bankruptcy.

47. Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a Chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter

13 bankruptcy, and then continued reporting once a consumer is discharged.

48. Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by both furnishers and Trans Union.

49. On or about February 12, 2026, Plaintiffs sent direct disputes to the CRA Defendants and requested that the CRAs investigate the reporting of the Flagstar account and the Extra CU account, and Plaintiffs specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiffs requested that under the FCRA, the CRAs conduct reasonable investigations and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Flagstar account and the Extra CU account.

50. Redacted copies of Plaintiffs' unsigned dispute letters sent to CRAs are attached hereto as Exhibits "E," "F," "G," "H," "I" and "J," respectively.

51. Equifax responded to Plaintiff Jennifer Vick's dispute on March 17, 2026.

52. A redacted copy of Equifax's response is attached hereto as Exhibit "K."

53. Equifax responded to Plaintiff Peter Vick's dispute on March 16, 2026.

54. A redacted copy of Equifax's response is attached hereto as Exhibit "L."

55. Equifax's response and the updated Consumer Report showed that Equifax made none of the substantive changes Plaintiffs requested in the direct disputes to Equifax, failed to update the Flagstar mortgage and Extra CU account after the chapter 13 bankruptcy was discharged, continued to report references to the chapter 13 bankruptcy on Plaintiffs' Flagstar mortgage and deleted Plaintiff Jennifer Vick's Extra CU account without explanation or reasons for an outright deletion. Additionally, Equifax continued to report the closed Flagstar mortgage with no closed date, a high balance of "$0," an incorrect last activity date, and an incorrect last payment date.

56. Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' dispute and failed to remedy the inaccuracies within the Flagstar Mortgage and Extra CU account and gave no explanation as to why the Flagstar mortgage was still reporting inaccurately or why the Extra CU account was deleted.

57. Plaintiffs' inaccurate Equifax consumer report was disseminated to third parties before and/or after the instant dispute.

58. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding the Flagstar mortgage.

59. Upon Plaintiffs' request to Equifax for verification and correction regarding the Flagstar mortgage, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Flagstar mortgage substantially or reasonably.

60. Additionally, upon Plaintiff Jennifer Vick's request to Equifax to verify and correct the Extra CU account, in accordance with Equifax's standard procedures, as well as the FCRA, but Equifax ignored the evidence Plaintiff Jennifer Vick included with her dispute letters and unilaterally deleted the Extra CU account from her Equifax Consumer Reports.

61. Equifax seemingly saw the word "Bankruptcy" in Plaintiff Jennifer Vick's dispute letter and unilaterally decided to delete the Extra CU account and not even attempt to contact the furnisher of credit information.

62. Equifax simply ignored Plaintiff Jennifer Vick's request to involve her lender for the Extra CU account and did not evaluate or consider the actual status of this account and lazily deleted the Extra CU account without any explanation.

63. Equifax's willful failure to involve Extra CU in Plaintiff Jennifer Vick's FCRA disputes is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Equifax to promptly notify Extra CU of the dispute and provide all relevant information it received from Plaintiff Jennifer Vick for Extra CU to investigate.

64. Equifax willfully decided to keep Plaintiff Jennifer Vick's dispute to themselves and deleted the Extra CU account without performing any investigation at all.

65. Equifax's failure to investigate Plaintiff Jennifer Vick's dispute letter, its failure to include Extra CU in the dispute process, and its willful actions have injured Plaintiff Jennifer Vick's credit standing.

66. Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiff Jennifer Vick's credit standing.

67. In the alternative, Equifax failed to contact Furnisher Defendant, and therefore, failed to perform any investigation at all.

68. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

69. Experian responded to Plaintiff Jennifer Vick's dispute on April 13, 2026.

70. A redacted copy of Equifax's response is attached hereto as Exhibit "M."

71. Experian responded to Plaintiff Peter Vick's dispute on April 13, 2026.

72. A redacted copy of Equifax's response is attached hereto as Exhibit "N."

73. The responses showed that Experian made none of the substantive changes Plaintiffs requested in the direct disputes to Experian, failed to update the Flagstar mortgage and

Extra CU account after the chapter 13 bankruptcy was discharged, continued to report references to the chapter 13 bankruptcy on Plaintiff Jennifer Vick's Extra CU account and Plaintiffs' Flagstar mortgage. Additionally, Experian continued to report the closed Extra CU account with no closed date, no last payment date, and an incorrect last activity date.

74. Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' dispute and failed to remedy the inaccuracies within the Flagstar Mortgage and Extra CU account and gave no explanation as to why the Flagstar Mortgage and Plaintiff Jennifer Vick's Extra CU account were still reporting inaccurately.

75. Plaintiffs' inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

76. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding the Flagstar Mortgage and Plaintiff Jennifer Vick's Extra CU account.

77. Upon Plaintiffs' request to Experian for verification and correction regarding the Flagstar Mortgage and Plaintiff Jennifer Vick's Extra CU account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Flagstar Mortgage and Plaintiff Jennifer Vick's Extra CU account substantially or reasonably.

78. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiffs' credit standing.

79. In the alternative, Experian failed to contact Furnisher Defendant, and therefore, failed to perform any investigation at all.

80. In the alternative to the allegation that Experian failed to contact Furnisher Defendant, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

81. Trans Union responded to Plaintiff Jennifer Vick's dispute on March 10, 2026.

82. A redacted copy of Trans Union's response is attached hereto as "Exhibit O."

83. Trans Union responded to Plaintiff Peter Vick's dispute on March 17, 2026.

84. A redacted copy of Trans Union's response is attached hereto as "Exhibit P."

85. Trans Union's responses showed that Trans Union made none of the substantive changes Plaintiffs requested in the direct disputes to Trans Union, failed to update the Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account after the chapter 13 bankruptcy was discharged, and deleted Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account without explanation or reasons for an outright deletion. Additionally, Trans Union continued to report the fraudulent Mission Lane account on Plaintiff Peter Vick's credit report with bankruptcy references when it should have been deleted.

86. Trans Union's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' dispute and failed to remedy the inaccuracies within the Flagstar Mortgage, Plaintiff Jennifer Vick's Extra CU account , and the fraudulent Mission Lane account reporting on Plaintiff Peter Vick's credit report and gave no explanation as to why Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account was deleted.

87. Plaintiffs' inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute.

88. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding

the fraudulent Mission Lane account reporting on Plaintiff Peter Vick's credit report.

89. Upon Plaintiffs' request to Experian for verification and correction regarding the fraudulent Mission Lane account reporting on Plaintiff Peter Vick's credit report, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff Peter Vick's information, claims or evidence, and did not make any attempt to verify the reporting of the fraudulent Mission Lane account reporting on Plaintiff Peter Vick's credit report substantially or reasonably.

90. Additionally, upon Plaintiffs' requests to Trans Union to verify and correct Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account, in accordance with Trans Union's standard procedures, as well as the FCRA, but Trans Union ignored the evidence Plaintiffs included with Plaintiffs' dispute letters and unilaterally deleted Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account from Plaintiffs' Trans Union Consumer Reports.

91. Trans Union seemingly saw the word "Bankruptcy" in Plaintiffs' dispute letters and unilaterally decided to delete Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account and not even attempt to contact the furnishers of credit information.

92. Trans Union simply ignored Plaintiffs' requests to involve Plaintiffs' lenders for the Flagstar account and Extra CU account and did not evaluate or consider the actual status of the accounts and lazily deleted Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account without any explanation.

93. Trans Union's willful failure to involve Flagstar and Extra CU in Plaintiffs' FCRA disputes is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Trans Union to promptly notify Flagstar and Extra CU of the dispute and provide

all relevant information it received from Plaintiffs for Flagstar and Extra CU to investigate.

94. Trans Union willfully decided to keep Plaintiffs' dispute to themselves and deleted Plaintiffs' Flagstar mortgage and Plaintiff Jennifer Vick's Extra CU account without performing any investigation at all.

95. Trans Union's failure to investigate Plaintiffs' dispute letters, its failure to include Flagstar and Extra CU in the dispute process, and its willful actions have injured Plaintiffs' credit standing.

96. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiff's credit standing.

97. In the alternative, Trans Union failed to contact Furnisher Defendant, and therefore, failed to perform any investigation at all.

98. In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

99. Plaintiffs elected to obtain an updated copies of Plaintiffs' credit reports due to CRA Defendants responses, or lack thereof responses.

100. A redacted copy of Plaintiff Jennifer Vick's April 2026 Tri-Merge credit report is attached hereto as Exhibit "Q."

101. A redacted copy of Plaintiff Peter Vick's April 2026 Tri-Merge credit report is attached hereto as Exhibit "R."

102. Based on Plaintiffs' April 2026 Tri-Merge credit reports, it was apparent that CRA Defendants made none of the substantive changes Plaintiff requested in the direct dispute to the

CRA Defendants.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

103. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

104. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

105. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

106. Equifax knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

107. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

108. After Equifax knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for the Flagstar and Extra CU tradelines, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information

concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

109. As a result of Equifax's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

110. Equifax's conduct, action, and inaction, were willful, rendering it liable for

punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

111. Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

112. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

113. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

114. As a result of Equifax's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in

Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

115. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

116. Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

117. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

118. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit

files it published and maintained concerning Plaintiffs.

119. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

120. Experian knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiffs.

121. Despite actual and implied knowledge that Plaintiffs' credit reports were and/or are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

122. After Experian knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for the Flagstar and Extra CU tradelines, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

123. As a result of Experian's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit

offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

124. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

125. Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

126. Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

127. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or

correct inaccurate information in Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit file, and relying upon verification from a source it has reason to know is unreliable.

128. As a result of Experian's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit

because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

129. Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

130. Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 .S.C. §1681e(b))**

131. Plaintiffs realleges and incorporates all paragraphs above as if fully set out herein.

132. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

133. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

134. Trans Union knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

135. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is

not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

136. After Trans Union knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for the Flagstar, Extra CU, and Mission Lane tradelines, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

137. As a result of Trans Union's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit report; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs' spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by

Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believes Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

138. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

139. Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

140. Plaintiffs reallege and incorporates all paragraphs above as if fully set out herein.

141. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in Plaintiffs' credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

142. As a result of Trans Union's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and

annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs has on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believes Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendant.

143. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

144. Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXTRA CU'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

145. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' disputes from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

146. Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiffs' dispute of the Flagstar account, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Flagstar account within the consumer reporting agencies reports.

147. As a result of Furnisher Defendant's conduct, action, and inaction, Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates

Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair their credit in light of the damage done to it continuously by Defendant.

148. Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

149. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

150. Plaintiffs respectfully request that this Honorable Court instruct the jury, as the

trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

151. Plaintiffs respectfully request that this Honorable Court award Plaintiffs' litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

152. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

153. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about Plaintiffs and have been a substantial factor in causing credit denials and other damages.

154. Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

155. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

156. Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened

with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiffs did not receive because of the false and derogatory information contained in Plaintiffs' credit reports; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit scores may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe they will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiffs have spent trying to repair their credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs pray that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs Peter Vick and Jennifer Vick, and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Extra Credit Union, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiffs' credit, pain and suffering,

embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Extra Credit Union, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer reports, credit reports, data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiffs might show Plaintiffs are justly entitled.

Date Filed: July 13, 2026

Respectfully submitted,

EASTERN DISTRICT OF MICHIGAN

*/s/ Blake R. Bauer*

Blake R. Bauer
MN Bar Number 0396262
(admitted to the USDC for
the EDMI)
Blake@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiffs***

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

July 13, 2026 — *Date*

*/s/ Blake R. Bauer*
Blake R. Bauer